UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X :

In re: MAT FIVE SECURITIES LITIGATION  :   Case No.: 08-civ-4152 (NRB)
: 
: 
: 
------------------------------------------------------X :

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER PARTIALLY LIFTING THE PSLRA DISCOVERY STAY AND PERMITTING LEAD PLAINTIFF TO CONDUCT DISCOVERY**

**HULETT HARPER STEWART LLP**
Kirk B. Hulett, Esq.
Blake M. Harper, Esq.
Sarah P. Weber
Bridget Fogarty Gramme
550 West C Street, Suite 1600
San Diego, CA 92101
Telephone: (619) 338-1133
Fax: (619) 338-1139

Lead Counsel for Plaintiffs

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
350 Fifth Avenue, Suite 5508
New York, New York 10118
Telephone: (212) 686-1060
Fax: (212) 202-3827

Liaison Counsel for Plaintiffs

Lead Plaintiff The Michael Joel Stone Revocable Trust and Albeco, Inc., respectfully submits this memorandum of law in support of its motion for an order partially lifting the PSLRA discovery stay and permitting Lead Plaintiff to conduct limited discovery.

## PRELIMINARY STATEMENT

The facts of this case present a paradigmatic example of why courts are required to monitor and scrutinize offers of compromise that are communicated by defense counsel to potential class members in putative class action lawsuits. A month after the commencement of this lawsuit and prior to the appointment of lead plaintiff and counsel, Defendants in this action issued to potential class members an *ex parte* settlement offer styled as a Tender Offer Memorandum dated May 30, 2008 (the "Tender Offer Memorandum"). The Tender Offer Memorandum solicited purchase of putative class members' shares in exchange for a cash payment and a new class of security, but conditioned on the execution of a blanket release of claims against all possible Defendants, including those asserted in this action.

This lawsuit is the culmination of a course of improper dealings by Defendants that severely harmed class members.[1] From the inception of the MAT Five fund, the Defendants' conduct has been rife with impropriety and self-dealing. Indeed, the terms of the MAT Five LLC agreement itself, which were never adequately disclosed to investors, allowed the Defendants to obtain equity and dilute investor interests on a whim, without shareholder approval. Thereafter, Defendants systematically misrepresented the risky nature of the MAT Five fund in order to sell shares of the fund through Citigroup's Global Wealth Management arm and Smith Barney to individual investor clients. In turn, Defendants utterly failed to manage the risks inherent in the fund which were known to them from the outset and employed leverage at

---

[1] This course of conduct is also the subject of an investigation by the SEC.

1

much higher multiples than that represented to shareholders, which ultimately led to the fund being on the brink of collapse.  Once in this precarious situation, Citigroup made a "cash infusion," later deemed an equity investment, to cover margin calls issued by Citigroup themselves and others.  This "cash infusion," whose terms were set after the fact, harmed shareholders and conferred a direct and clear benefit to Citigroup and various entities.

Now, through the Tender Offer, Defendants seek to absolve themselves of all liability for this course of improper conduct through a broad general release without disclosing any of the facts essential for investors to make an informed decision as to whether to accept the offer. Further, the release improperly purports to include the claims in this litigation but fails to provide the settlement disclosures that are required by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §77z-1(a)(7).

The Tender Offer Memorandum states that the purpose of the Tender Offer is to provide liquidity to shareholders.  An earlier draft of the Tender Offer Memorandum however, discussed at a hearing to preliminarily enjoin the Tender Offer in a related proceeding in the Delaware Chancery Court on July 15, 2008, apparently listed three reasons for the Tender Offer, none of which is to provide liquidity to investors. Ex. 1, July 15, 2008 Hearing Transcript ("Transcript") at 28:12-29:22.[2]  This document, along with some of the pertinent briefing and all of the pertinent discovery material related to the preliminary injunction motion, was filed under seal. In fact, the draft Memorandum revealed that one purpose was apparently "to minimize potential litigation from fund investments." *Id.* at 28:12-29:17. Indeed, the record shows that the release requirement was "crucial" to Defendants and that the Tender Offer would not have been initiated without it.  *Id* at 86:23-87:3 and 87:22-88:12.

---

[2]  All reference to "Ex. ___" shall refer to an Exhibit attached to the Declaration of Phillip Kim, filed herewith.

In the proceeding to enjoin the Tender Offer, Vice Chancellor Steven Lamb found the Tender Offer Memorandum to be both inadequate and misleading and stated that he intended to enjoin Defendants from proceeding with the Tender Offer unless Defendants provided supplemental disclosures to the shareholders, with the Delaware plaintiff's input, correcting numerous omissions and inaccuracies contained in the Memorandum.  Ex. 1, Transcript at 89:1-17.

In the coming days, Defendants are poised to disseminate a supplemental disclosure to the Tender Offer Memorandum to putative class members with the same broad release that will presumably release the claims being litigated in this action.  While the court and the parties in the Delaware action are assessing the adequacy of the disclosures as they relate to the Tender Offer itself, they do not have the same duty or interest as this Court and this Plaintiff to assess whether the supplemental disclosures that will be made provide the information necessary for the members of the Class to determine whether or not they should release their claims in this case.

Because of the unique and exceptional circumstances of this case, limited discovery is required so that Lead Plaintiff (and this Court) may ascertain the extent to which the class members are misinformed about the claims in this action and the extent of the releases Defendants have already obtained by way of the Tender Offer. While Lead Plaintiff recognizes this Court's predisposition not to interfere with the Delaware litigation, Plaintiff submits that this Court is the only Court with jurisdiction to supervise a settlement offer under Rule 23 and the PSLRA.

Under Rule 23, the Court is required to review and approve any offers of compromise that would release the class' claims. Defendants have failed to seek such approval making the proposed releases void as a matter of law. Further, the PSLRA mandates that an offer of

settlement and the class notice meet minimum standards and disclose certain facts. The adequacy of disclosure of those facts cannot be reasonably assessed by the Plaintiff and the Court without the discovery sought here. The discovery sought by this motion has already been produced in the Delaware case, but under seal. If it is provided to Plaintiff's counsel here, it will allow the Plaintiff and the Court to assess the adequacy of the class notice process that has thus far excluded this Court and counsel for the Lead Plaintiff and the Class.

Lead Plaintiff respectfully requests that this Court partially lift the PSLRA discovery stay and permit it to obtain discovery relating to the potential release of claims in this litigation. Specifically, Lead Plaintiff seeks 1) the discovery that has already been exchanged between the litigants in the Delaware action, and 2) any communications and documents concerning the releases already obtained by Defendants from putative class members.

## STATEMENT OF FACTS

**New York Federal Litigation**

On May 1, 2008, this action was filed by shareholders on behalf of all persons who purchased or otherwise acquired shares of the MAT Five LLC fund ("MAT Five") pursuant and/or traceable to a false and misleading Private Placement Memorandum ("PPM") dated December 18, 2006 and/or its Supplements. This lawsuit charges defendants MAT Five, Citigroup Alternative Investments LLC ("CAI"), Citigroup Fixed Income Alternatives ("CFIA"), Citigroup Global Markets, Inc ("Citigroup Global"), and Reaz Islam, with violations of Section 12(a)(2) of the Securities Act in connection with a materially inaccurate PPM and breach of their fiduciary duties under Delaware law for, among other things, self-dealing and mismanagement. *E.g.* Docket no. 1. On July 9, 2008, the Court appointed The Michael Joel Stone Revocable

Trust and Albeco, Inc. as Lead Plaintiff and Hulett Harper Stewart LLP and the Rosen Law Firm, P.A., as Lead and Liaison Counsel to the Class, respectively.  Docket no. 13.

Defendant MAT Five is a Delaware limited liability company that makes investments in limited liability company interests issued by Municipal Opportunity Fund Five National ("MOF Five"). MOF Five is a Delaware limited liability company that makes leveraged investment in fixed-rate, tax exempt municipal bonds. ¶ 5.[3]  MAT Five and MOF Five are managed by Citigroup, Inc. ("Citigroup"), and its entities.  Defendant Citigroup Global represents the corporate and capital markets arm of Citigroup and was Placement Agent for MAT Five.  ¶ 6. Defendant CAI was the Managing Agent for MAT Five and CAI also manages capital on behalf of Citigroup.  ¶ 7.  Defendant CFIA assisted in the sale of MAT Five shares to investors and assisted in the distribution of the PPM and related supplemental selling documents.  ¶ 8. Defendant Reaz Islam, at all relevant times, served as the Managing Director and Senior Investment Officer of CAI and the Managing Director of CFIA, and managed the day-to-day operations of MAT Five on behalf of CAI.

The Complaint asserts that Defendants, through the issuance of a materially inaccurate PPM and supplemental selling documents, falsely promoted the MAT Five fund to investors as being designed to produce *stable* cash flows in a tax-advantaged arbitrage opportunity.  ¶¶ 19-26. In reality, the Complaint asserts, the investment was very risky and could precipitously drop in value if not properly managed.  ¶ 27.  The Complaint asserts that the PPM and other selling documents were also false and misleading because they touted the investment as conservative (as demonstrated by the Defendants' assurances that the bonds involved in the fund were low-risk and investment grade) and repeatedly highlighted the risk management strategy employed by the

---

[3]  All reference to "¶ ___" or "¶¶ __" shall refer to the first-filed complaint in this action filed as Docket no. 1.

fund when, in fact, the Defendants did not have sufficient risk management practices in place. ¶¶ 19-27.

The Complaint also asserts that Defendants CAI, CFIA, and Islam separately and together violated their fiduciary duties owed to plaintiffs and the class as a result of the March 2008 cash infusion into the fund by Citigroup as well as other instances of self-dealing and mismanagement that directly injured plaintiffs and the class.   ¶¶ 50-53.  This cash infusion is significant, as Vice Chancellor Lamb found at the July 15, 2008 hearing in the Delaware Chancery Court, because it brings the entire fairness of the self-interested and dilutive transaction into issue.  The record in the Delaware litigation revealed that the terms of Citigroup's cash infusion into the fund, which was purportedly required to cover margin calls, were set after the fact by management that were all controlled or affiliated with Citigroup, subjecting the transaction to an "entire fairness" analysis, rather than an analysis under the "business judgment" rule.  *See* Ex. 1, Transcript at 72:9-73:14; 46:3-22.  Further, evidence in the Delaware proceedings indicates that senior management of the MAT Five fund described the fund as being "put together with duct tape and glue."  *See* Ex. 1, Transcript at 33:10-20.

A month after the commencement of this action, and prior to the appointment of Lead Plaintiff, Defendants disseminated to class members the Tender Offer Memorandum.  *See* Ex. 2, Tender Memo.  By this purported tender offer, MAT Five seeks to acquire its outstanding shares from class members in exchange for a paltry $0.231 per share, which was the net asset value of the fund as of April 30, 2008, and the issuance of a so-called "participation" share.  *Id.* at 1-2.[4]

---

[4]  A portion of gains on any "participation" share are paid to investors only after Citi is made entirely whole on its investment along with a significant return on capital.  *See* Ex. 2, Tender Offer Memorandum at 11 (Holders of the Participation Shares are entitled to a percentage of the gains upon liquidation or redemption of any of the 2008 Citi Shares less "the purchase price of the 2008 Citi Shares redeemed plus the cost of capital thereon . . . .").

Citigroup, which will fund the transaction, will receive a newly issued share for each share tendered, on the condition that tendering class members will tender all shares and unconditionally agree to a broad and general release, which will cover any actual or potential legal claim asserted in this action against all potential defendants. The release states in relevant part:

> In connection with the Exchange Offer, participants tendering Existing Shares will be required to execute and deliver the Release. The Release releases and discharges all claims against the Company, the Managing Agent and any sub-agent, the selling broker for the Existing Shares, Citi, MAT Five, MOF Five, any of our past or present sub-advisors, our auditors and tax preparers, the Administrator and past and present counsel to such parties (such parties, and their respective affiliates (including but not limited to any other portfolio of MAT Five) and the employees, officers, directors, partners, counsel and agents of each of the aforesaid parties, are collectively referred to herein as the "Releasees") from all actions or claims directly or indirectly arising from, relating to or in any manner connected with (i) any investment by such participant in the Company, including the acquisition or disposition of any securities of the Company, (ii) such participant's acceptance of the terms of this Exchange Offer, (iii) the operation, management, supervision, or investment of any of the assets of the Company by any Releasees or (iv) any actions taken or omitted to be taken by any of the Releasees in connection with or otherwise relating to or affecting in any way the Company or the acquisition, ownership, or disposition of Existing Shares or either series, whether those claims arise under the United States federal or state securities laws, arbitration agreements or otherwise and regardless of whether those claims are known or unknown at the time of the tender pursuant to the Exchange Offer. No Participation Shares will be issued in exchange for Existing Shares, and no Exchange Payment will be paid, unless a properly executed Release has been granted by the tendering Existing Holder in accordance with the Exchange Offer Subscription Agreement.

Ex. 2, Tender Memo at 28.

While the stated purpose of the Tender Offer was to create liquidity for shareholders (Ex. 2, Tender Memo at 4), in truth, a "crucial" purpose, as revealed in the Delaware case, was to obtain from shareholders a release of claims asserted in *this* action. *See* Ex. 1, Transcript at 28:12-29:22; 87:22-88:12. The Tender Offer Memorandum mentions the filing of this lawsuit,

but fails to provide sufficient information for class members to make an informed decision whether to settle their claims. It states in relevant part:

> On May 1, 2008 an investor in MAT Five filed a class action complaint against MAT Five, Citi and the Managing Agent in the U.S. District Court for the Southern District of New York for breach of fiduciary duties and violations of Section 12(a)(2) of the Securities Act. The complaint alleges that MAT Five, Citi, and the Managing Agent misrepresented the level of risk of MOF Five's investment strategy, and that the prospectus relating to the Existing Shares contained untrue statements of material fact and concealed and failed to disclose material facts. The complaint further alleged that Citi and the Managing Agent failed to properly preserve assets of MAT Five and ignored and did not protect against numerous conflicts of interest in connection with Citi's investment in MAT Five. The plaintiff seeks class certification, compensatory damages, reimbursement of legal fees and expenses, rescission or a rescissory measure of damages and additional equitable and/or injunctive relief. There can be no assurance that other similar suits will not be filed or that claims will not be made against MAT Five or any of its affiliates.

*Id.* at 17.[5]

**Delaware State Litigation**

On June 19, 2008, the original plaintiff in the Federal litigation, the Marie Raymond Revocable Trust, filed a verified class action complaint in the Delaware Court of Chancery seeking to preliminarily enjoin Defendants from conducting the Tender Offer based on the Defendants' breach of their fiduciary duty of disclosure by omitting material information from the Tender Offer Memorandum. *See* Ex. 3, DE Complaint. The Delaware action names the same defendants as the federal class action, but adds MOF Five as an additional defendant. *Id.* Defendants are also represented in the Delaware action by the same defense counsel as in the

---

[5] It is noteworthy that in an apparent attempt to limit access to claims in this action, that prior to the dissemination of the Tender Offer Memorandum on or after May 29, 2008 Defense counsel circulated a stipulation and proposed order dated May 27, 2008 to counsel for plaintiff in the first filed action, setting the date for the filing of the more detailed consolidated amended complaint 60 days from the date of the filing of the appointment of lead plaintiff − far beyond the date of the expiration of the Tender Offer. *See* Docket no. 9. The Tender Offer was originally scheduled to expire on July 15, 2008, however, it has been extended by Defendants twice and is currently set to expire on August 8, 2008.

federal action.   Ex. 4, DE Docket.   According to the DE Complaint, the Tender Offer Memorandum is materially inaccurate in that: (1) it fails to disclose how the Tender Offer consideration was calculated (Ex. 3, DE Complaint ¶ 49); (2) it fails to provide sufficient information about what claims are being released (*Id.* ¶¶ 50, 53); (3) it contains inadequate disclosure about an SEC Inquiry and Financial Regulatory Industry Regulatory Arbitration proceeding concerning, *inter alia*, MAT Five (*Id.* ¶¶ 51-52); (4) it fails to adequately disclose the reasons for the Tender Offer and Citigroup's involvement (*Id.* ¶ 54); and (5) it inadequately discloses the circumstances and terms of Citigroup's cash infusion.  *Id.* ¶ 55.

On June 26, 2008, Vice Chancellor Lamb issued an Order granting the plaintiff's request for expedited consideration of the injunction and allowing expedited discovery in that case, subject to an appropriate confidentiality agreement.   Ex. 5, DE Order.   On July 3, 2008, Vice Chancellor Lamb entered a Stipulation and Order governing the exchange of confidential information.   *Id.* at 13.   Thereafter, the parties engaged in discovery, including depositions of witnesses, and fully briefed the issues surrounding the preliminary injunction.[6]  *See* Ex. 4, DE Docket.   As noted above, Vice Chancellor Lamb heard the motion to enjoin the Tender Offer on July 15, 2008.  *See* Ex. 1.

On July 14, 2008, in advance of the July 15, 2008 hearing before Vice Chancellor Lamb, Lead Plaintiff sent a letter to Vice Chancellor Lamb expressing concerns that the Tender Offer Memorandum was an unauthorized *ex parte* settlement communication to class members and requesting that the Delaware Court lift the seal to permit Lead Plaintiff access to the discovery material produced in the Delaware action.  *See* Ex. 6, July 14, 2008 Letter.

---

[6]  Part of the pertinent briefing and all the discovery material filed with the Delaware Court in conjunction with the preliminary injunction motion is sealed.  *Id.*

At the July 15, 2008 hearing on the motion for preliminary injunction it was publicly revealed that a primary purpose of Defendants' initiation of the Tender Offer was to obtain the release of claims from class members in the action pending in the Southern District of New York and that a prior draft of the Tender Offer Memorandum expressly included minimizing potential litigation risk as a reason for the tender offer. Ex. 1, Transcript at 28:12-29:7. Moreover, counsel for defendants explicitly stated, "it's fair to say that the tender offer would not have occurred without the release because there is an enormous amount of value and potential value being conveyed." *Id.* at 86:23-87:3. Yet the Tender Offer Memorandum distributed to class members states the sole purpose of the offer is to increase class members' liquidity.

Vice Chancellor Lamb ruled at the hearing that the Tender Offer Memorandum is inadequate, stating, in relevant part:

> THE COURT: All right. Well, I'm going to ask you to do this. I think this is a very unusual situation − certainly for me it is. I've never done this before. But I can't imagine that I wouldn't issue an injunction in this situation because I think your disclosure document is just completely inadequate. That's an exaggeration. It's inadequate in the ways that we've discussed.
>
> I can go write an opinion, but you're not going to get it for ten days or two weeks. Or I'll ask you to communicate with me and the plaintiffs about this later today, if you can. I will await a further submission by you that contains additional disclosures and the plaintiffs can look at it. If they have any complaints about it, they can address them to me. I'll ask you to give some thought to that and let me know how you wish to proceed.
>
> If I write an opinion, I'll tell you what I think is wrong with it, in words and on paper I think you can work from.

*Id.* at 88:24-89:20.

Based on the record at the July 15th hearing, Vice Chancellor Lamb found the Tender

Offer Memorandum to be inadequate in at least the following ways:[7]

- With respect to disclosures concerning the release, if Defendants continued to seek such a broad release that at minimum the manner in which MAT Five was managed from its inception to February 29, 2008 (date surrounding Citigroup's cash infusion) would have to be disclosed. *See id.* at 83:12-88:21.

- The negotiation process and the fairness determination of the Citigroup's cash infusion into the fund also had to be disclosed, especially because Citigroup was on both sides of the transaction, the terms of the cash infusion were not set until *after* the funds were provided, and based on the fact that Citigroup viewed the cash infusion as a very good investment opportunity *for itself*. *See id.* at 72:9-79:11 (emphasis added).

- As to the purpose of the Tender Offer, Defendants had to disclose all the background facts leading up to the Tender Offer, including investor complaints received, that the purpose of the tender offer is to obtain releases, and the like. *See id.* at 82:5-83:11.

- The record at the hearing revealed a document distributed to investors dated May 6, 2008, which stated that Defendants would permit investors to redeem their shares without incurring redemption fees when market conditions permitted, waiving the two-year lockup period that the shares would otherwise be subject to so that investors could sell their shares at the net asset value. The Tender Offer Memorandum failed to discuss this communication which should have been disclosed or otherwise explained. *See id.* at 26:2-27:17.

- The Tender Offer Memorandum should disclose the performance expectations going forward and any plans for the fund, especially the fund's current plans to obtain financing and liquidity facilities that may affect the ability of the fund in the future to pay dividends, interest, and redemptions. *See id.* at 66:8-71:1.

On July 16, 2008, defense counsel wrote a letter to Vice Chancellor Lamb informing him

that Defendants planned to draft supplemental disclosure documents and circulate them to

counsel for plaintiffs in the Delaware action for comment. The letter provides that if an

---

[7] Without access to the full briefing and discovery exchanged between Defendants and the other litigants in Delaware, a complete and accurate listing is not possible.

agreement is reached, the supplemental disclosures will be sent to MAT Five shareholders. If the parties are unable to agree on the disclosures, "plaintiffs will have the opportunity to approach the Court prior to the distribution of the disclosures to stockholders, should plaintiffs so choose." *See* Ex. 7, July 16, 2008 Letter. The Defendants also notified MAT Five investors, by way of a Supplement to the Tender Offer Memorandum dated July 16, 2008, that the Tender expiration was extended to August 8, 2008 and that further disclosures would be forthcoming as a result of the Delaware litigation. Ex. 10, Supplement No. 2 to Confidential Tender and Exchange Offer Memorandum.

While Defendants' forthcoming supplemental disclosure document may provide additional information as to the scope of the release, the Delaware Court and litigants have no obligation to the putative class members in the New York litigation. Indeed, counsel for plaintiff in the Delaware action stated that "we don't necessarily have [sic] a dog in this fight, in as far as it may relate to issues that are raised in this case or issues raised in that [SDNY] case." Ex. 1, Transcript at 38:18-22. Likewise, counsel for Defendants stated that whether Defendants' attempt to obtain *ex parte* releases of the Class' claims is permissible or valid should be addressed in the federal court action. *Id. at* 40:21-22 ("We don't believe [the propriety of the unauthorized settlement communication and proposed releases under Rule 23] to be an issue before this Court.") Finally, Vice Chancellor Lamb also recognized this Court's authority over the issues presented here, noting that the release would potentially include the claims in both actions "if I permit it and if the judge in New York permits it." Ex. 1, Transcript at 37:1-2.

Thus, this Court's intervention is necessary to protect the interests of the Class in the New York litigation by permitting limited discovery with respect to the terms of the Tender Offer.

# ARGUMENT

## I.    THE COURT SHOULD PARTIALLY LIFT THE PSLRA DISCOVERY STAY

The Private Securities Litigation Reform Act of 1995 ("PSLRA") contains a stay of discovery provision which states, in relevant part:

> In any private action under this [subchapter], all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds, upon the motion of any party, that particularized discovery is necessary to preserve evidence or to **prevent undue prejudice** . . . .

15 U.S.C. § 77z-1 (b)(1) (emphasis added).[8]

Congress enacted the discovery stay in order to "minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint." *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (citing H.R. Conf. Rep. No. 104-369, at 14 & 37 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 735); *see also In re Cabletron Sys.*, 311 F.3d 11, 32 (1st Cir. 2002) (the PSLRA "was designed to erect barriers to frivolous suits, but not to make meritorious claims impossible to bring") (citing S. Rep. No. 104-98, at 4 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 683)). The PSLRA does not define the "undue prejudice" required to lift the discovery stay, however, courts have defined "undue prejudice" as improper or unfair detriment, but less than irreparable harm. *In re Refco, Inc.*, No. 05 Civ. 8626 (GEL), 2006 WL 2337212, at *1 (S.D.N.Y. Aug. 8, 2006) (citations omitted).

---

[8] This request to lift the PSLRA discovery stay is ripe for adjudication. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301 (S.D.N.Y. 2002) (lifting PSLRA discovery stay even before the filing of a motion to dismiss); *In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 544 (N.D. Ohio 2004) (considering request for lift discovery stay prior to the filing of motion to dismiss).

**A. This Court is Charged with Providing the Protections for Class Members Created by Rule 23 and the PSLRA**

Under Rule 23(d) of the Federal Rules of Civil Procedure, the court is charged with "supervisory authority over a defendant's communications with putative class members." *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005). *See also* Fed. R. Civ. P. 23(d); and *Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 99 Civ. 4567(AGS), 2001 WL 1035132, at *2 (S.D.N.Y. Sept. 7, 2001) (citations omitted).  "[B]ecause of the potential for abuse, a district court has both the duty and broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.'" *Currency Conversion*, 361 F. Supp. 2d at 252 (quoting *Gulf Oil v. Bernard*, 452 U.S. 89, 100 (1981)).

To these ends, a court is authorized and duty-bound to protect the interests of the class from "'misleading communications [or omissions] from the parties or their counsel.'"  *Currency Conversion*, 361 F. Supp. 2d at 252 (quoting *Erhardt v. Prudential Group, Inc.*, 629 F.2d 846 (2d Cir. 1980), (other citations omitted); *see also In re School Asbestos Litig.*, 842 F.2d 671, 680 (3d Cir. 1988) ("Misleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice.") The court's authority and duty is present even before the putative class is certified. *Currency Conversion*, 361 F. Supp. 2d at 251; *Dziennik v. Sealift, Inc.*, No. 05-cv-4659(DLI), 2006 WL 1455464, at *3 (E.D.N.Y. May 23, 2006) ("Fed. R. Civ. P. 23(d) authorizes the court to regulate communications with putative class members even before certification."); *Ralph Oldsmobile*, 2001 WL 1035132, at *2; *see also Keystone Tobacco Co. v. U.S. Tobacco Co.*, 238 F. Supp. 2d 151, 154 (D.D.C. 2002) ("[T]he Court rejects defendants' position that it has no authority to limit communications between litigant and putative class members prior to class

14

certification."). Indeed, courts have found settlement communications improper and void as a matter of law. *See, e.g., Currency Conversion*, 361 F. Supp. 2d at 254 (voiding arbitration clauses grafted onto class members after the class action was filed based on insufficient notice); *see also Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1199, 1206 (11th Cir. 1985) (court has power to void opt outs by class members arising from defendants improper communications with putative class members); *Ralph Oldsmobile*, 2001 WL 1035132, at *6-*7 (releases obtained by Defendant from class members unilaterally and without court approval or notice of the litigation found to be voidable).

In addition to this Court's duty to supervise settlement communications with the putative class under Rule 23(d), the PSLRA itself contains specific disclosure requirements that are applicable to any settlement agreement that is disseminated to class members. This provision requires that

> [a]ny proposed or final settlement agreement that is published or otherwise disseminated to the class [to] include each of the following statements, along with a cover page summarizing the information contained in such statements:
>
> (A) Statement of plaintiff recovery.  The amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis.
>
> (B) Statement of potential outcome of case.
>
> > (i) Agreement on amount of damages. If the settling parties agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this title [15 USCS §§ 77a et seq.], a statement concerning the average amount of such potential damages per share.
> >
> > (ii) Disagreement on amount of damages.  If the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this title [15 USCS §§ 77a et seq.], a statement from each settling party concerning the issue or issues on which the parties disagree.
> >
> > (iii) Inadmissibility for certain purposes.  A statement made in accordance with clause (i) or (ii) concerning the amount of damages shall not be admissible in any Federal or State judicial

action or administrative proceeding, other than an action or proceeding arising out of such statement.

(C) Statement of attorneys' fees or costs sought.  If any of the settling parties or their counsel intend to apply to the court for an award of attorneys' fees or costs from any fund established as part of the settlement, a statement indicating which parties or counsel intend to make such an application, the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought.

(D) Identification of lawyers' representatives.  The name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members concerning any matter contained in any notice of settlement published or otherwise disseminated to the class.

(E) Reasons for settlement.  A brief statement explaining the reasons why the parties are proposing the settlement.

(F) Other information.  Such other information as may be required by the court.

15 U.S.C. §77z-1(a)(7). The Defendants' Tender Offer Memorandum clearly does not satisfy the

PSLRA's disclosure mandate; nor could it without input from this Court and Plaintiff.

**B.  The Court Should Partially Lift the PSLRA Discovery Stay Because The Requested Discovery is Required to Protect the Interests of the Class**

This case presents unique and exceptional circumstances that warrant the partial lifting of

the stay.  Lead Plaintiff does not seek a blanket lifting of the stay or the opportunity to conduct a

fishing expedition for new claims.  Rather Lead Plaintiff merely seeks discovery already

prepared and exchanged between Defendants and the litigant in Delaware (a class member), and

documents and communications concerning the releases Defendants have obtained to date from

class members. Obtaining the requested discovery will ensure that (i) class members have been,

and will be, adequately informed in providing a release of claims in this action, and (ii)

Defendants comply with, and class members receive, the protections provided by, Rule 23 and

the PSLRA.

If class members tender their shares, they may have no adequate remedy in this case because they will have arguably released their claims. *See, e.g., Global Intellicom, Inc v. Thomson Kernaghan & Co.*, No. 99 Civ. 342 (DLC), 1999 WL 223158, at *2 (S.D.N.Y. Apr. 16, 1999) (finding that plaintiff had made a showing for "undue prejudice" because the stay may prevent plaintiff from seeking redress for the alleged violations); *see also Worldcom*, 234 F. Supp. 2d at 305-306 (lifting stay because PSLRA plaintiff faces "the very real risk that it will be left to pursue its action against defendants who no longer have anything or at least much to offer"); *see also Refco*, 2006 WL 2337212, at *1 (undue prejudice to lift the stay is improper or unfair detriment, but less than irreparable harm). Moreover, these limited discovery requests are sufficiently particularized and will not prejudice the Defendants.[9] *See Worldcom*, 234 F. Supp. 2d at 306 (requested documents in a motion to lift discovery stay sufficiently particularized when the request demands documents produced by a defendant in another proceeding).

The Delaware litigation has a different, though related, purpose: enjoining the Tender Offer altogether on the grounds of inadequate disclosure. It is undisputed that the Delaware plaintiff is an uninterested party with respect to the *ex parte* communications to Class Members relating to settlement of this litigation and the propriety of the releases with respect to the claims here. The requested discovery is necessary to ensure the present settlement communications or any subsequent settlement communications are accurate and comply with Rule 23.

The Delaware Court and parties to that litigation have no interest in seeing that the Federal procedures mandated by Rule 23 and the PSLRA are complied with. It is only this Court

---

[9]  It is noteworthy that Defendants have already produced a specific set of documents to the SEC in connection with information requests Defendants received from the SEC.  These same documents were also produced to the plaintiff in Delaware.  *See* Ex. 1, Transcript at 58:2-7.

17

that has the authority and ability to do so. Counsel for both the Delaware plaintiffs and defendants admitted as much on the record at the July 15, 2008 hearing. Counsel for defendants:

> MR. DAVIDOW: They sent us a letter raising that concern under Rule 23 of the Federal Rules of Civil Procedure. *We've relayed that concern to the judge in the Southern District of New York, so that if at some time they raise that issue in that court, then that court can decide whether, for its purposes under Rule 23, the release is or isn't valid. We don't believe that to be an issue before this Court.*
>
> Indeed, since this Court will be addressing the issue of the adequacy of disclosure underlying the release, this Court's ruling may have some impact on what ultimately happens there on the substance. *We don't believe it's an issue that this Court need address.*

Ex. 1 at 40:16-41:4. Likewise, Counsel for plaintiffs stated: "Simply, at this point, we don't necessarily have kind of a dog in this fight, in as far as it may relate to issues that are raised in this case or issues raised in that [SDNY] case." *Id*. at 38:18-22.

Vice Chancellor Lamb also suggested that this Court's intervention was equally appropriate. In questioning plaintiff's counsel about their involvement in this Court, the Vice Chancellor noted that MAT Five shareholders who tendered would release the claims pending in this Court only "if I permit it and if the judge in New York permits it." *Id*. at 37:1-2.

Absent lifting the stay, Defendants would be permitted to use the stay as both a sword and a shield: a sword because they will obtain releases of Class Members' claims and a shield because Class Members are unable to evaluate the value of those claims since, as the Chancery Court found, Defendants failed to provide adequate disclosures concerning the tender offer and the details surrounding their self-dealing transactions pertaining to the cash infusion. *See* Ex. 1, Transcript at 83:12-88:21; 72:9-79:11; *see also id*. at 72:9-73:14; 46:3-22. Courts have lifted the discovery stay in similar circumstances. *See, e.g., Vacold LLC v. Cerami,* No. 00 Civ. 4024(AGS), 2001 WL 167704, at *7 (S.D.N.Y. Feb. 16, 2001) (lifting stay to prevent defendants

from shielding itself from liability); *Medical Imaging Ctrs. of Am., Inc. v. Lichtenstein*, 917 F. Supp. 717, 721 n.3 (S.D. Cal. 1996) (if movant has shown "that the discovery stay would prejudice it because the [movant] would be shielded from eventual liability for any material violation of the securities laws, the Court would find that an 'undue prejudice' exception to the statutory stay had been shown"); *accord In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 129, 130 (S.D.N.Y. 2003).

Accordingly, the Court should partially lift the PSLRA discovery stay and grant Lead Plaintiff the limited and particularized discovery described herein.  *See* Ex. 9, Proposed Document Request. Access to the to the limited discovery Lead Plaintiff seeks is necessary to ensure that the Class Members rights with respect to this litigation are adequately protected and that any settlement communications Defendants make concerning the claims herein comply with the protections afforded by Rule 23 and the PSLRA.

## CONCLUSION

For the foregoing reasons, the Court should enter an Order partially lifting the discovery stay in order for Lead Plaintiff to obtain the discovery that Defendants have exchanged with the plaintiff in the Delaware litigation and for all documents and communications pertaining to the release of claims that Defendants have obtained to date and providing any other or further relief the Court deems just and proper.

Dated: August 1, 2008                                      Respectfully submitted,

                                                           **THE ROSEN LAW FIRM, P.A.**


                                                            */s/ Phillip Kim*
                                                           Laurence M. Rosen, Esq. (LR 5733)
                                                           Phillip Kim, Esq. (PK 9384)
                                                           350 Fifth Avenue, Suite 5508
                                                           New York, New York 10118

Telephone: (212) 686-1060
Fax: (212) 202-3827

Liaison Counsel for Plaintiffs

**HULETT HARPER STEWART LLP**
Kirk B. Hulett, Esq.
Blake M. Harper, Esq.
Sarah P. Weber
Bridget Fogarty Gramme
550 West C Street, Suite 1600
San Diego, CA 92101
Telephone: (619) 338-1133
Fax: (619) 338-1139

Lead Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that on this on the 1st day of August, 2008, a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER PARTIALLY LIFTING THE PSLRA DISCOVERY STAY AND PERMITTING LEAD PLAINTIFF TO CONDUCT DISCOVERY was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Phillip Kim*